People of Puerto Rico, Plaintiff and Appellee, *v.* Eugenio Mercado, *alias,* Tito de Oro, Defendant and Appellant.

No. 4711.   Argued March 24, 1933.—Decided February 2, 1934.

*Arturo Aponte* for appellant.  *R. A. Gómez, Fiscal,* for appellee.

Mr. Justice Wolf delivered the opinion of the court.

In the District Court of Humacao the appellant was charged with voluntary manslaughter for having, in a heat of passion, killed Evangelista Becerril, a human being.

After the San Felipe Cyclone, the National Guard of Puerto Rico was called out for certain purposes. The defendant, Eugenio Mercado, known also as Tito de Oro, was a sergeant of the National Guard. In going from Yabucoa to Luquillo, where the defendant was to take charge of the post, he had to pass through Fajardo. He was accompanied by a captain of the National Guard who, upon arriving at Fajardo, went to rest and gave permission to the defendant to visit a sister of the latter. This the defendant did; and it was upon coming back from his visit that the facts of this case took place. He was wearing the uniform of the National Guard. He entered a café where Evangelista Becerril was. The jury had a right to believe from the evidence that the original provocation, especially as to words, proceeded from the defendant. The unquestioned evidence in the case is that he fired six shots, of which four were aimed at the victim and one shot and killed him.

The defendant in the court below attempted to set up three defenses: First, that he entered the café in pursuit of his

duties as a member of the National Guard, inasmuch as there a prohibited game was being played; second, that the killing was in self-defense; and, third, that he had been acquitted by a court-martial. What the appellant principally insisted upon was that he acted in self-defense.

The defendant on the stand said that he did not fire until he saw a knife in the hands of the deceased. Therefore, it was clearly admitted by the defendant that he shot at Evangelista Becerril. The evidence of the government tended to show that the deceased had no weapon in his hands, and the only evidence tending to support the theory of the defendant was that, after the struggle, in handling the deceased, a knife was found in his shoe or stockings. If there was no error in the admission of evidence or in the instructions, the jury was entirely justified in rendering a verdict of guilty. Beyond the testimony of the defendant, we find nothing to show that Becerril had a knife in his hands or did anything else to give the defendant a right to shoot him in self-defense.

The first assignment is that the court erred in not admitting in evidence a document containing an investigation made by a military court and showing the action taken by it, in order to attack the credibility of the witnesses for the prosecution. The record discloses that in one way or another the fact that the defendant was acquitted by a court-martial was brought before the jury, and, of course, unduly so. We say ''unduly so'' because in a criminal case the conviction or acquittal of a person before a court-martial has absolutely no bearing on the guilt or innocence of the defendant in another trial. One may readily imagine that if the court-martial had happened to convict the soldier, in a trial before the civil authorities he could very properly object to the fact of this conviction being offered in evidence. We say this independently of any question of jeopardy.

During the trial, as one by one the eye-witnesses of the government took the stand, they were examined by counsel for the defendant and asked whether they had not made incon-

sistent statements before the court-martial, and then the court permitted counsel to read to the witnesses or perhaps even to show them their alleged inconsistent statements. It was a complete opportunity on the part of the defendant to attack the credibility of the said witnesses. When the defendant attempted to offer the whole document containing the proceedings before the court-martial, the court, upon objection of the prosecuting attorney, ruled it out. The document, besides the alleged inconsistencies, showed a lot of other irrelevant matter such as the statements of other witnesses. Counsel for the defendant was partly permitted to show that the witnesses made inconsistent statements by reading to them, but the defendant had no right to insist that a lot of irrelevant or inadmissible matter should go before the jury.

The case of *Sosa* v. *Cardona,* 30 P.R.R. 255, cited by the appellant, has no application. There the error charged was that the declaration of a witness was unduly put into evidence, but there was nothing to show that the writing was offered in evidence, but simply that the inconsistent statements were suffered to be read.

The appellant objects to some of the instructions of the court. It is never error for the court to draw the attention of the jury to misstatements of the evidence made by counsel for the defense. Therefore, the court was not mistaken in saying a witness had not testified that he saw a knife in the hands of Becerril. The statement of the witness was to the effect that after the struggle a closed knife was found. The *Fiscal* points out that not even before the military court did this witness actually say that he saw a knife in the hands of the victim. That it is the privilege and duty of the court to draw the attention of the jury to mistakes of counsel is evident from Blashfield on Instructions to Juries, volume I, pages 570 and 573, and from our decision in *People* v. *Negrón,* 37 P.R.R. 765.

The same rule applies to a similar comment made in another connection by the court.

The court also said that a witness, although he hesitated a little; testified that Becerril frequently took liquor. The objection was to the court saying that the witness hesitated. If it was a fact that the witness hesitated, it would be evident to the jury and, in any event, the comment was harmless, especially if the attention of the court was not specifically drawn thereto.

The third assignment of error is that the court said that in the café where the shooting took place no public offense was being committed. The appellant maintains that this was invading the province of the jury. The evidence did not disclose that anybody was playing a prohibited game. If it was a question whether or not a prohibited game was being played, the court had a right to tell the jury, as a matter of law, that no prohibited game was being played. As the *Fiscal* maintains, people have a right to play cards and the presumption of innocence protects persons so playing until the contrary is shown.

The contention of the appellant was that he was on police duty by reason of the mobilization of the National Guard and had the right to go into the café to make an investigation. Even if he had been a policeman, the court would have had the right to make the same comment. Anybody may go to a café, and neither a policeman nor a member of the National Guard has any particular privilege when he enters the café unless a prohibited game is actually being played there.

We have not searched the record with great care with regard to this point, but so far we have discovered nothing that shows that the National Guard was mobilized for the purpose of proceeding against violations of the penal law, whatever their nature, but was mobilized to help to preserve order and perhaps for other purposes.

The fourth assignment of error is perhaps a trifle more serious. The court said that the appellant was not doing any public duty in Fajardo. However, as the *Fiscal* points

out, there is nothing in the record to show that he was performing a public duty. He appeared in the café in military uniform. A peace officer under the law is immediately recognized as such if he wears the usual uniform, but the uniform of the National Guard has ordinarily no special significance. Like ourselves, the *Fiscal* was unable to find anything in the record which showed that the defendant had any public duty to perform in Fajardo. However, even if a policeman had entered the café, it would have been by reason of no public duty, unless something to the contrary was shown. Moreover, we have questioned whether a member of the National Guard, on this body being mobilized, has the privileges and attributes of a peace officer.

Nevertheless, the court in its instructions gave the jury the right to decide for themselves whether from the sole testimony in the case—the testimony of the defendant—the defendant was acting as a public officer.

In its instructions the court said that under certain circumstances a person had no right to kill and if the opportunity was a perfectly clear one he should even retreat. The court did not say, as assumed by the defendant, that a man is always obliged to retreat. On the contrary, the whole charge shows that the court said that a man had a right to attack when there was an apparent danger.

With regard to all these instructions, we have searched the record and we do not find that any specific exception was taken. Therefore, the case falls clearly within the principles stated in *People* v. *Maldonado,* 45 P.R.R. 405. The court should always be given an opportunity to correct its mistakes. If, for example, the defendant had drawn the attention of the court to some of the jurisprudence of this court with respect to self-defense, the judge would have had an opportunity to adapt his instructions to the actual doctrine laid down. It is clear from our decision in *People* v. *Barrios,* 23 P.R.R. 772, that a person is rarely obliged to retreat.

The sixth assignment of error, relative to the comments of the court on the argument of the attorney for the defense, has been previously covered.

The judgment appealed from will be affirmed.